UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED COMMERCE CENTER, INC.,** § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:13-cv-2075 |
| § | |
| **THE TRAVELERS LLOYDS INSURANCE** § | |
| **COMPANY,** § | |
| § | |
| Defendant. § | |

**THIRD PARTY HUNTER'S PRECISION CONSTRUCTION &
ROOFING, INC.'S RESPONSE TO MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND REQUEST FOR PROTECTION**

TO THE HONORABLE COURT:

Third Party Hunter's Precision Construction & Roofing, Inc. ("Precision") responds to Defendant The Travelers Lloyds Insurance Company's ("Travelers") Motion to Compel Production of Documents (the "Motion" or "Traveler's Motion") and seeks protection from the Court as follows:

**BACKGROUND**

The following facts are undisputed:  1) Plaintiff United Commerce Center, Inc. ("UCC") suffered a covered loss to the roof of one of its buildings (the "Property") resulting from a hail storm (the "Damage"); 2) UCC paid the extra premium Travelers required to purchase "replacement cost coverage" in the insurance policy at issue (the "Policy"); 3) the Policy requires Travelers to make an actual cash value payment (the "ACV Payment")[1] related to the Damage whether or not UCC elected to repair the Property; 4) Travelers has made the ACV Payment to UCC; 5) the Policy requires Travelers to make an additional payment to make up the difference in the ACV payment and "the cost of repairing or replacing the . . . damaged property . . . [once

---

[1] The ACV Payment is the cost to repair less depreciation.

the] damaged property is actually repaired . . . ." (the "RCV Payment"); 6) UCC elected to repair the Damage to the Property; 7) UCC chose Precision to repair the Damage and Travelers approved the choice; 8) Travelers approved an estimate of the RCV Payment in the amount of $355,587.97, which was to be paid when the repairs were complete; 9) Precision completed the repairs to the Property in approximately December 2012; and 10) Travelers has refused to make the RCV Payment, allegedly because UCC will not provide Travelers with Precision's actual costs to repair the Damage to the Property.

## ARGUMENT AND AUTHORITIES

A.   Travelers' "Contractual" Argument is flawed—

Travelers' Motion is based upon the following flawed premise: "Pursuant to the contract between the parties, Travelers is entitled to know the actual amount spent to replace the roof on Plaintiff's building . . . ." *See* Motion to Compel at page 3, paragraph 4.  This statement is made without citation to any authority or any specific provision of the Policy.

In truth, the Policy says nothing of the sort.  Instead, the Policy requires Travelers to "pay the cost of repairing . . . the . . . damaged property," which is the amount Precision has charged Travelers' insured—UCC—for the work, not Precision's actual costs.  The Policy *does not say* Travelers is only obligated to pay *a third-party contractor's actual costs*.[2]  Indeed, under Texas law, general contractors overhead, profit and sales tax are considered "replacement costs" because they are factored into policy limits and contractors' bids.  *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831 (N. D. Tex. 2011).

In any event, even if there were a provision in the Policy purporting to grant Travelers the right to audit Precision's books on this project, it would be unenforceable as to Precision because

---

[2] Such a reading, of course, would be untenable inasmuch as third-party contractors would not exist if insurance policies were construed to prohibit them from making a profit.

Precision is not a party to the insurance contract. The insured, UCC, has no right to force Precision to reveal its costs on the project. UCC's insurance contract with Travelers does not grant Travelers any greater rights *vis a vis* Precision than UCC has.

B.     Travelers' Request is Irrelevant—

As demonstrated by the Declaration of Richard A. Hunter, which is attached as Exhibit A and incorporated by reference, Travelers has stated that it would not fulfill its obligation to make the RCV Payment until first being provided with all of Precision's cost documentation and, even then, would only pay 20% above Precision's actual costs to cover profit and overhead. *See* App. 2-3 (Decl. of Richard A. Hunter at ¶ 7). But there is nothing in the Policy purporting to limit a third-party contractor's profit to any set percentage. Accordingly, Precision's cost documentation is irrelevant to Travelers' duties and obligations under the Policy.

This is especially true because Travelers *has not* alleged that Precision failed to perform the required work or that the price it charged was unreasonable. Indeed, it would be impossible for Travelers to do so because the work was more than competently performed and the charges Precision made for the work were determined by the Xactimate estimating software, the very system Travelers' used in its own estimates. *See* App. 2 (Decl. of Richard A. Hunter at ¶ 5). Accordingly, Travelers' desire to dig through Precision's bank, credit card and employee records is purely a fishing expedition, with no hope of eliciting any information relevant to this dispute. It is no basis for Travelers to refuse to make the RCV Payment, and UCC rightfully is pursuing statutory and common law bad faith claims against Travelers.

C.     The Information Travelers Seeks is Confidential and Proprietary—

Finally, Precision's prices—the amounts Precision pays for supplies, the amounts it pays its employees and the amounts it pays its subcontractors—are confidential and proprietary

business information. *See* App. 3-4 (Decl. of Richard A. Hunter at ¶¶ 8-11). A trade secret is defined in part as information that provides a competitive advantage to its user. *See Hyde Corp.*, 314 S.W.2d 763, 776 (Tex. 1958); *Collins v. Ryon's Saddle & Ranch Supplies, Inc.*, 576 S.W.2d 914, 915 (Tex. Civ. App.—Fort Worth 1979, no writ); *Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir.1991).

The identity of Precision's suppliers and subcontractors, coupled with the prices paid, are confidential and proprietary to Precision. *See* App. 3-4 (Decl. of Richard A. Hunter at ¶¶ 8-11). Pricing information can constitute a trade secret. *See Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 653–54 (Tex. App.—Houston [14th Dist.] 1988, no writ); *see also Global Water Group, Inc. v. Atchley,* 244 S.W.3d 924, 928 (Tex. App.—Dallas 2008, pet. denied) (customer lists, pricing information and buyer contacts have all been recognized as trade secrets).

Texas courts use the following six factor test to determine whether a trade secret or proprietary information privilege exists: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).

These factors are "relevant, but not dispositive," and the party claiming privilege is "not required to satisfy all six factors because trade secrets do not fit neatly into each factor every time." *Id.* at 739-40. The Declaration of Richard Hunter nonetheless meets each of the six criteria. *See* App. 3-4 (Decl. of Richard A. Hunter at ¶¶ 8-11).

Because Precision has established that the information Travelers seeks is confidential and that disclosure would cause it harm, the burden then shifts to Travelers to establish that the information is sufficiently relevant and necessary to its case to outweigh the harm that disclosure may cause. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 801-02 (S.D. Tex. 2010). Inasmuch as the information sought is wholly irrelevant to the issues in this case—certainly in the absence of any allegation that Precision overcharged for its work—Travelers' cannot meet this burden and its motion should be denied.

In sum, Travelers simply has no contractual or legal right to the information it seeks. The information is irrelevant to any issue in this lawsuit and it would damage Precision's business were Travelers' Motion to be granted.

WHEREFORE, Precision requests that Travelers' Motion be denied, that the court grant it protection from being required to produce the subpoenaed materials and that it recover such other relief to which it may be entitled.

Respectfully submitted,

s/ Bobby M. Rubarts
Bobby M. Rubarts
State Bar No. 17360330
bobby.rubarts@koningrubarts.com
Brent E. Basden
State Bar No. 24047828
brent.basden@koningrubarts.com

**KONING RUBARTS LLP**
1700 Pacific Avenue, Suite 1890
Dallas, Texas 75201
214-751-7900
214-751-7888 – fax

**ATTORNEYS FOR THIRD PARTY RESPONDENT HUNTER'S PRECISION CONSTRUCTION & ROOFING, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record who have consented to service by electronic means.

s/ Bobby M. Rubarts
Bobby M. Rubarts